Slip Op. 18–110

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                              :

FLINT HILLS RESOURCES, LP, formerly :
known as KOCH PETROLEUM GROUP, :
LP, *et al.*,                         :
                              :

              Plaintiffs,     :     Before: Richard K. Eaton, Judge
                              :

              v.                :     Consol. Court No. 06-00065
                              :

UNITED STATES,             :
                              :

              Defendant.    :
_____:

## <u>OPINION</u>

[Plaintiffs' motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.]

Dated:  September 6, 2018

     *Michael F. Mitri*, Phelan & Mitri, of Fairfield, CT, argued for plaintiffs. With him on the brief were *Jack D. Mlawski*, Galvin & Mlawski LLC, of Rockville Centre, NY, and *Steven H. Becker*, Becker Law Firm PLLC, of New City, NY.

     *Tara K. Hogan*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, and *Jeanne E. Davidson*, Director. Of Counsel on the brief was *Richard McManus*, Office of the Chief Counsel, U.S. Customs & Border Protection, of Washington, DC.

     Eaton, Judge: In this consolidated action, plaintiff Flint Hills Resources, LP, formerly Koch

Petroleum Group, LP, and consolidated plaintiffs Texaco Refining & Marketing Inc., Texaco

Aviation Products, LLC, Shell Oil Company, and Citgo Petroleum Corporation (collectively,

"plaintiffs") move for summary judgment, challenging the decisions of the U.S. Customs and

Border Protection ("Customs") to deny plaintiffs' administrative protests seeking drawback of

(1) Harbor Maintenance Taxes ("HMT")[1] imposed under 26 U.S.C. § 4461, (2) Merchandise

Processing Fees ("MPF")[2] imposed under 19 U.S.C. § 58c, and/or (3) Environmental Taxes

("ET")[3] imposed under 26 U.S.C. § 4411, that were paid or imposed upon the entry of their

petroleum products into the United States (collectively, "taxes and fees"). Mem. Supp. Pls.' Am.

Mot. Summ. J., ECF No. 80 ("Pls.' Br.") 1. Plaintiffs ask the court to order the re-liquidation of

their entries, payment of their drawback claims, and interest as provided by law.  *See* Pls.' Br. 1.

By its cross-motion for summary judgment, defendant, the United States ("defendant" or

the "Government"), on behalf of Customs, asks the court to deny plaintiffs' summary judgment

motion, and dismiss the case because plaintiffs' protests were  properly denied and Federal Circuit

precedent has answered the questions presented by plaintiffs' motion. *See* Def.'s Resp. Pls.' Mot.

Summ. J. and Cross-Mot. Summ. J., ECF No. 84 ("Def.'s Br.") at 8-9.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (2006), and, for

the reasons below, denies plaintiffs' motion for summary judgment and grants defendant's cross-

motion for summary judgment.

---

[1]      "The HMT is a tax on port use calculated at a rate of 0.125 percent of the value of the commercial cargo. It was enacted pursuant to the Water Resources Development Act of 1986, Pub.L. No. 99–662, Title XIV, § 1402, 100 Stat. 4266 (1986), and is codified at 26 U.S.C. § 4461." *George E. Warren Corp. v. United States*, 26 CIT 486, 486 n.1, 201 F. Supp. 2d 1366, 1367 n.1.

[2]      MPF is a fee assessed on all imports pursuant to 19 U.S.C. § 58c(a)(9).

[3]      "The ET[ is] an excise tax imposed on crude oil received at a United States refinery and on petroleum products entered into the United States for consumption, use, or warehousing." *Aectra Refining and Marketing Inc. v. United States*, 31 CIT 2086, 2087 n.4, 533 F. Supp. 2d 1318, 1318 n.4 (2007), *aff'd*, 565 F.3d 1364 (Fed. Cir. 2009) ("*Aectra I*") (citing 26 U.S.C. § 4611).

## LEGAL FRAMEWORK

At the time a majority[4] of plaintiffs entered their products into the United States, under 19

U.S.C. § 1313(j)[5] and § 1313(p),[6] an importer could receive a refund of up to 99 percent of the

amount paid on any duty, tax, or fee imposed under federal law "because of its importation" into

---

[4]     The court notes that because plaintiffs' lawsuit is comprised of the remaining cases previously suspended under both *Aectra I*, 31 CIT at 2086, 533 F. Supp. 2d at 1318 and *Shell Oil Co. v. United States*, 35 CIT __, 781 F. Supp. 2d 1313 (2011) ("*Shell I*"), the dates on which plaintiffs' drawback claims were filed range between the mid 1990s and the early 2000s. As shall be seen, although there were changes in both the statute and the regulations during this time, such changes do not affect the ultimate treatment of plaintiffs' claims in this case. One noteworthy change in the drawback statute occurred in 1999. Prior to 1999, claims filed under the "substitute petroleum derivatives" provision of the drawback statute were limited to 99 percent of "the amount of the duties paid on, or attributable to" the imported petroleum products. *See* 19 U.S.C. § 1313(p), (a) (1994). In 1999, Congress amended 19 U.S.C. § 1313(p)(4), "so as to provide that the drawback amount payable for non-manufacturing claims shall be that attributable to the imported article under 19 U.S.C. § 1313(j) governing unused merchandise drawback." *Aectra I*, 31 CIT at 2088, 533 F. Supp. 2d at 1319 (citing Miscellaneous Trade and Technical Corrections Act of 1999, Pub. L. No. 106–36, § 2420(d), 113 Stat. 127, 178–79 (1999) ("1999 Trade Act")). In other words, the 1999 Trade Act allowed for a more generous provision of the statute, § 1313(j), to govern drawback claims like those at issue here.

[5]     Prior to 2004, § 1313(j) (governing "unused merchandise drawback") stated, in pertinent part, that if there is "imported merchandise on which was paid any duty, tax, or fee imposed under Federal law *because of its importation*, any other merchandise" that "is commercially interchangeable with such imported merchandise," and "is, before the close of the 3-year period beginning on the date of importation of the imported merchandise, either exported or destroyed under customs supervision," and "is not used within the United States" before such exportation or destruction, then

> upon the exportation or destruction of such other merchandise the amount of each such duty, tax, and fee paid regarding the imported merchandise shall be refunded as drawback, but in no case may the total drawback on the imported merchandise . . . exceed 99 percent of that duty, tax, or fee.

19 U.S.C. § 1313(j)(2) (2000) (emphasis added).

[6]     Subsection 1313(p) governs "substitution of finished petroleum derivatives" and states, in pertinent part, that if an "article . . . of the same kind and quality as a qualified article is exported" and its exporter imported the qualified article "in a quantity equal to or greater than the quantity of the exported article," then the exporter may file a drawback claim. 19 U.S.C. § 1313(p).

the United States if (1) the goods are either exported unused or (2) if acceptable substitute

merchandise is exported within the statutory and regulatory timeframe. *See* 19 U.S.C. § 1313(j),

(p) (2000); *see also* 19 C.F.R. § 191.176(2)(i) (2000) (requiring the exportation of the substitute

merchandise within 180 days of entry of the imported merchandise). This refund is known as a

"drawback." *See* 19 U.S.C. § 1313(j).

Pursuant to the statute, a claimant has three years from the date of exportation or destruction

of the entered merchandise (or substitute merchandise) to file a drawback claim, including "all

documents necessary to complete a drawback claim," or else it will be "considered abandoned."

19 U.S.C. § 1313(r)(1) (2000). Since the year 1998, Customs' regulations have defined a

"complete" drawback claim as

> consist[ing] of the drawback entry on Customs Form 7551, applicable certificate(s)
> of manufacture and delivery, applicable Notice(s) of Intent to Export, Destroy, or
> Return Merchandise for Purposes of Drawback, applicable import entry number(s),
> coding sheet unless the data is filed electronically, and evidence of exportation or
> destruction under subpart G of this part.

19 C.F.R. § 191.51(a)(1) (1998).

Beginning in the mid-1990s, the issue of whether certain taxes or fees were eligible to

drawback became the subject of litigation. In *Texport Oil Co. v. United States*, the Federal Circuit

considered whether HMT and MPF were eligible for drawback under 19 U.S.C. § 1313(j)(2). As

to HMT, the Court found that

> the dispositive question is whether the HMT is assessed "because
> of . . . importation." 19 U.S.C. § 1313(j)(2). This language, we think, is best read
> as limiting the scope of the charges eligible for drawback to only those with a
> substantial nexus to the importation of merchandise. We thus read the "because
> of . . . importation" clause to require a nexus between the assessed charges and the
> act of importation, and therefore preclude the grant of drawback to a duty, tax, or
> fee that is assessed in a nondiscriminatory fashion against all shipments utilizing
> ports.

*Texport Oil Co. v. United States*, 185 F.3d 1291, 1296 (Fed. Cir. 1999).

Thus, the Court found that because "[t]he HMT is a generalized Federal charge for the use of certain harbors," and is "intended to be assessed independently of whether the 'port use' is for imports, exports, or other shipments," the HMT "does not have the necessary nexus to the importation of goods to qualify it for drawback under section 1313(j)(2)." *Id.* at 1297 (first citing 26 U.S.C. § 4461 and then citing 19 C.F.R. § 24.24(b)(1)). The Court did find, however, that the MPF was eligible for drawback. *Id.* at 1296.

The Federal Circuit reaffirmed its decision with respect to HMT, and extended its holding to ET, in *George E. Warren Corp. v. United States*, 341 F.3d 1348 (Fed. Cir. 2003). There, the Court found that

> Warren has shown no question that is precedent-setting or of exceptional importance or any question not correctly resolved by *Texport* and thus no justification for *en banc* hearing of this appeal. Under *Texport*, Warren's claim for HMT is absolutely foreclosed. Nor has Warren shown any error in the trial court's application of the *Texport* rule to the protest claim for drawback of ETs. We hold simply: like the HMT, the ET is not imposed on cargo "because of . . . importation."

*Warren*, 341 F.3d at 1356. Read together, the *Texport* and *Warren* decisions made it clear that neither HMT nor ET qualified for drawback under 19 U.S.C. § 1313(j)(2).

In December 2004, following the issuance of the Federal Circuit's opinions in *Texport* and *Warren*, Congress amended 19 U.S.C. § 1313(j) to allow importers to receive drawback of duties, taxes, or fees imposed under federal law "*upon entry or importation*" (rather than only allowing drawback of those duties, taxes, or fees imposed "*because of . . . importation*"). *See* Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108–429, Title I, § 1557(a), (b), 118 Stat. 2579 (2004) ("2004 Trade Act") (emphasis added). The amendment applied to "any drawback claim filed on or after [December 3, 2004, the date of the Act's enactment,] and to any drawback entry filed *before that date if the liquidation of the entry is not final on that date*." *See id.* (emphasis added). Thus, assuming an importer's unliquidated drawback claim complied with all other

drawback statutes and regulations, HMT and ET were eligible for drawback under the 2004 Trade Act.[7]

After the amendment of the statute, the Federal Circuit addressed the new statutory provision in *Aectra Refining and Marketing, Inc. v. United States*, 565 F.3d 1364 (Fed. Cir. 2009) ("*Aectra II*"). There, plaintiff Aectra[8] had timely filed ten drawback claims between 1997 and 1998, following its export of substitute petroleum derivatives, but only sought drawback of import duties, and not HMT, MPF, or ET. Customs liquidated Aectra's drawback entries on or about November 28, 2003, and refunded the import duties Aectra had requested in its drawback claim, but not the unrequested HMT, MPF, or ET. Subsequently, on or about February 2, 2004, Aectra filed protests that sought, for the first time, drawback of HMT and MPF.[9] The protests, however, were filed more than three years after the date of exportation of Aectra's substitute petroleum derivatives, and therefore, Customs denied Aectra's protests as time-barred under 19 U.S.C. § 1313(r)(1). Aectra sought review in this Court, which sustained Customs' protest denials, and the Court of Appeals affirmed. *Aectra Refining and Marketing Inc. v. United States*, 31 CIT 2086, 533 F. Supp. 2d 1318 (2007), *aff'd*, 565 F.3d 1364 (Fed. Cir. 2009) ("*Aectra I*").

---

[7]      As noted above, in 1999, following the *Texport* decision, it was clear that importers were allowed drawback for MPF.

[8]      As noted above, several cases involving similarly situated plaintiffs—including plaintiffs in the present case—were suspended under *Aectra*.

[9]      According to the Federal Circuit, Aectra did not actually pay any ET:

In its Complaint, Aectra makes passing reference to an additional category of fees and taxes, the Environmental Tax [("ET")] imposed under 26 U.S.C. § 4611. On appeal the government contends, and Aectra apparently does not dispute, that there is no evidence that Aectra actually paid that tax on the goods in question.

*Aectra II*, 565 F.3d at 1366 n.1.

In reaching its decision in *Aectra II*, the Federal Circuit concluded that (1) the 2004 Trade Act did not suspend the time limit for completing a drawback claim for HMT, MPF, and ET (*i.e.*, that a claimant must file a drawback claim for HMT, MPF, and ET within three years from exportation of the substitute merchandise); (2) a "complete claim" included the 19 C.F.R. § 191.51(b)'s[10] requirement that a claimant "include an accurate calculation of the entire amount that it seeks to be refunded under the drawback statute," including any HMT, MPF, and ET sought; and (3) "futility [of filing drawback claims for HMT and ET[11]] does not excuse the failure to file a proper claim for limitations purposes." *Aectra II*, 565 F.3d at 1372-73 (first citing 19 U.S.C. § 1313(r)(1) and then citing 19 C.F.R. § 191.51(b) (1998)). In short, the Federal Circuit held that a "complete" drawback claim must include a correct calculation of any taxes and fees for which refund is sought and the claim must be made no later than three years following export of the substitute merchandise. *Id.*

Following the Court of Appeals' decision, importers with claims that were suspended under *Aectra I* moved to designate another test case in this Court: *Shell Oil Company v. United States*, Court No. 08-00109. *Shell* was designated the test case for the purpose of determining whether drawback claimants that filed drawback claims prior to April 6, 1998 (the effective date of 19 C.F.R. § 191.51(b)'s "correct calculation" requirement) were also required to claim HMT and ET[12] within the three-year limitation. *See Shell Oil Co. v. United States*, 35 CIT __, __, 781 F. Supp. 2d

---

[10]        This regulation provides, in pertinent part, that "[d]rawback claimants are required to correctly calculate the amount of drawback due." 19 C.F.R. § 191.51(b) (1998).

[11]        Under the *Texport* decision, claims for MPF were not in dispute.

[12]        In its Motion for Summary Judgment, Shell sought drawback of MPF, however, during oral argument, Shell conceded that, because the company failed to raise drawback of MPF in its protests and in its Complaint, it had abandoned any claim to drawback of MPF. *Shell I*, 35 CIT at __, 781 F.Supp.2d at 1322 n.4.

1313, 1323 (2011), *aff'd*, 688 F.3d 1376 (Fed. Cir. 2012) ("*Shell I*"). Shell filed drawback claims

in 1995 and 1996, seeking only drawback of the import duties paid, which Customs refunded on

liquidation. *See id.*, 35 CIT at __, 781 F. Supp. 2d at 1317-18. Thereafter, Shell filed protests with

Customs in 1997, beyond the three-year limitation period for filing drawback claims, which

sought, for the first time, HMT and ET payments that Shell had made in connection with its

imports. *Id.* 35 CIT at __, 761 F. Supp. 2d at 1318. Customs denied Shell's protests and Shell filed

a summons in this Court contesting the denials. *Id.* This Court sustained Customs' denial, and the

Federal Circuit affirmed.

The Federal Circuit held that Shell's claim for drawback of HMT and ET were time-barred

under *Aectra II*. *See Shell Oil Co. v. United States*, 688 F.3d 1376, 1385 (Fed. Cir. 2012) ("*Shell

II*"). Specifically, in response to plaintiff's argument that "re-filing its HMT and ET drawback

claims would have been futile because Customs had a policy of denying drawback claims for HMT

and ET," the Court found that "'futility does not excuse the failure to file a proper claim for

limitations purposes' because a 'claimant is generally required to file a complete and specific claim

within the limitations period, even if the government authority to [which] the claim is presented is

certain to dispute the validity of the claim.'" *Shell II*, 688 F.3d at 1383 (quoting *Aectra II*, 565 F.3d

at 1373). The Court also observed that, although the pre-1998 version of the regulations did not

include an explicit requirement to include a "correct calculation" of the amount of drawback sought

with its drawback claims, Shell still bore the burden "to place Customs on notice as to the specific

amount it [was] seeking for a refund," and thus, "was required to place Customs on notice that it

was seeking drawback for HMT and ET." *Shell II*, 688 F.3d at 1384. In other words, even before

the 1998 regulation specifically required a "correct calculation" of the amount of drawback due

(including taxes and fees), importers were required to put Customs on notice that they were seeking

drawback of HMT and ET before the expiration of the three-year limit imposed under 19 U.S.C.

§ 1313(r)(1).


# BACKGROUND

Plaintiffs are the remaining importers whose claims were suspended under both *Aectra* and

*Shell*.[13] *See* Order dated Dec. 13, 2012, ECF No. 33 ("Consolidation Order"). Between the mid

1990s and the early 2000s, plaintiffs filed drawback claims with Customs on petroleum products

the companies imported into the United States, and later exported as non-manufactured "substitute

finished petroleum derivatives." *See* Agreed Statement of Material Facts Not in Dispute, ECF No.

78 ("Statement") ¶ 2; *see* 19 U.S.C. § 1313(p)(2)(A)(iii).[14] Plaintiffs' drawback claims requested

a refund of the duties paid, but did not request a refund of taxes and fees. Customs liquidated the

---

[13]     On December 27, 2006, this Court ordered the suspension of plaintiffs' cases under *Aectra I*. *See* Order dated Dec. 27, 2006, ECF No. 6. Following the *Aectra II* decision, on March 8, 2010, this Court issued a suspension disposition order requiring the suspended plaintiffs to remove their cases from the *Aectra II* test case calendar or face dismissal of their respective actions. *See* Order dated Mar. 8, 2010, ECF No. 7. The majority of the previously suspended plaintiffs moved to suspend their cases under *Shell I* and on August 24, 2010, this Court ordered those plaintiffs be suspended under *Shell I*. *See* Order dated Aug. 24, 2010, ECF No. 10. Following the final disposition of *Shell II*, plaintiffs again moved for the remaining cases to be suspended under this case, as another test case, but this Court instead ordered the consolidation of the remaining cases. *See* Order dated Dec. 13, 2012, ECF No. 33. Because of this Court's consolidation order, all of the importers identified in the attached schedule to that order will be bound by this decision. *See Junior Gallery, Ltd. v. United States*, 16 CIT 687, 688, 1992 WL 199196, at *1 (1992) (noting that the final decision in a consolidated action has a binding legal effect on all of the merged actions).

[14]     All of the substitution articles covered by the relevant drawback entries were exported within 180 days after the entry of the designated imported merchandise against which drawback was claimed, and the drawback entries were filed with Customs within three years after the dates of exportation of the substituted articles identified therein. Statement ¶¶ 11, 12.

various entries and approved drawback refunds to the extent of 99 percent of the duties paid. *See* Statement ¶ 3.[15]

Following liquidation, plaintiffs timely filed protests, asking, for the first time, that Customs approve drawback for taxes and fees. Customs denied each of plaintiffs' protests. Statement ¶ 4. Plaintiffs now challenge the denial of those protests. The court has jurisdiction under 28 U.S.C. § 1581(a).

## STANDARD OF REVIEW

Under USCIT Rule 56(a), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Marathon Oil Co. v. United States*, 24 CIT 211, 214 93 F.Supp. 2d 1277, 1279 (2000) (internal quotation marks and citation omitted). As there are no remaining questions of material fact in dispute, summary judgment is proper in this case.

## DISCUSSION

### I.    The Court Reviews Protest Denials *De Novo*

As noted above, plaintiffs timely filed protests following the liquidation of the subject merchandise for "drawback refunds to the extent of 99% of the Harmonized Tariff Schedule of the

---

[15]    Customs suspended liquidation of all 19 U.S.C. § 1313(p) petroleum product drawback claims between August 1, 1997, and June 26, 2002. *See* Statement ¶ 13. Additionally, although the entries were liquidated by Customs, as shall be seen, the liquidation did not become final because the liquidation determination was timely protested. *See* 19 U.S.C. § 1514.

United States ("HTSUS") Column I duties[16] paid on the imported petroleum products designated therein." Statement ¶ 3.

Plaintiffs first argue that this Court's jurisdiction under 28 U.S.C. § 1581(a) is limited to reviewing the specific reason stated by Customs for denying plaintiffs' protests. Pls.' Br. 2. Thus, because some of Customs' protest denials "did not include the assertion that the drawback claimants failed to complete their claims for taxes and fees before the expiration of a three-year period following export of the substitute merchandise," plaintiffs insist, with respect to those protests at least, they must prevail. Pls.' Br. 2. A review of the protests shows that they were denied for one of three reasons: (1) because the "original decision [was] found correct," (2) because the contested exactions were "ineligible" for drawback, or (3) because the claimant failed to make its claim within the three-year limitation period imposed under 19 U.S.C. § 1313(r)(1). According to plaintiffs, any decision by Customs that failed to expressly raise a timeliness objection (1) constitutes a decision, made final by operation of law, that plaintiffs' claims for taxes and fees were timely, and (2) deprives Customs of the right to assert timeliness as a defense to a valid claim for drawback of taxes and fees. Pls.' Br. 2, 4-5 (first citing 19 U.S.C. § 1514,[17] and then citing 19 U.S.C. § 1515[18]). Thus, for plaintiffs, "the issue of the timeliness of the drawback claim for taxes

---

[16]     "Column 1 duties" are the duties imposed based on the classification of the merchandise within the HTSUS.

[17]     Title 19 U.S.C. § 1514(a)(6) provides that "decisions of the Customs Service," including "the refusal to pay a claim for drawback . . . shall be final and conclusive upon all persons," unless "a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade . . . ."

[18]     Title 19 U.S.C. § 1515(a) provides, in pertinent part, that notice of a protest denial "shall include a statement of the reasons for the denial, as well as a statement informing the protesting party of his right to file a civil action contesting the denial of a protest . . . ." For

and fees is not justiciable as to those protests . . . that were denied by Customs for reasons stated *other* than failing to timely complete the drawback claims." Pls.' Br. 9. In other words, plaintiffs argue that, as to those protests that were denied for reasons other than being time-barred, the court's review is limited to determining whether Customs' stated reason for denying the protest is correct.

Plaintiffs' argument is without merit. "In any civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930, this Court reviews the record *de novo*." *Rheem Metalurgica S/A v. United States*, 20 CIT 1450, 1456, 951 F. Supp. 241, 246 (1996); *see also BP Oil Supply Co. v. United States*, 35 CIT__, __, Slip Op. 11–116 at 3 (Sept. 16, 2011) ("Denial of a protest is reviewed *de novo*."); *Marathon Oil*, 24 CIT at 213-14, 93 F. Supp. 2d at 1279 ("[28 U.S.C. § 1581(a)] claims are reviewed *de novo*, and in this instance the Court owes no deference to Defendant's interpretation."). Thus, when reviewing Customs' denial of drawback, "the court will sustain Customs' decision if it is proper, even if the rationale is not articulated in Customs' decision." *Precision Specialty Metals, Inc. v. United States*, 24 CIT 1016, 1024, 116 F. Supp. 2d 1350, 1360 (2000). Therefore, the court will look to the merits of plaintiffs' claims—including any issues regarding the timeliness of plaintiffs' drawback claims for taxes and fees—notwithstanding any failure by Customs to specifically reference the timeliness provision of 19 U.S.C. § 1313(r)(1) in its protest decisions.

---

plaintiffs, the court's review of a protest denial is confined to the reason or reasons expressly stated by Customs in this requisite notice.

**II.     Plaintiffs' Arguments Regarding the Timeliness of its Drawback Claim for Taxes and Fees are Foreclosed Under *Aectra* and *Shell***

      **A.   A Complete Drawback Claim Must Include a Correct Calculation of Any Amount of Drawback Due**

In order for Customs to grant a drawback claim, the claim must be "complete." *See* 19 U.S.C. § 1313(r)(1). Since 1998, Customs' regulations have specifically defined a "complete drawback claim" as consisting of specified forms, certificates, and notices. *See* 19 C.F.R. § 191.51(a)(1) (1998). In addition, as case law makes clear, even before promulgation of the 1998 regulation, an importer "at a minimum, was required to place Customs on notice that it was seeking drawback for HMT and ET."[19] *Shell II,* 688 F.3d at 1384. In *Aectra II*, the Federal Circuit previously found that a "complete" drawback claim must also specifically include a correct calculation of any taxes and fees sought pursuant to 19 C.F.R. § 191.51(b) (1998). *See Aectra II*, 565 F.3d at 1371-72 ("The payment of drawback . . . is expressly conditioned—by statute—upon compliance with regulations promulgated by the Secretary of the Treasury. One such regulation, 19 C.F.R. § 191.51 (1998), is directly applicable here. . . . Under the correctly calculate requirement of [§ 191.51(b)], a complete claim for purposes of the three-year limit of 19 U.S.C. § 1313(r)(1) must include a correct calculation of the amount of drawback due. . . . [W]e think that on its face the phrase correctly calculate the amount of drawback due requires a claimant to include an accurate calculation of the entire amount that it seeks to be refunded under the drawback statute.") (internal citations omitted). Notwithstanding the Federal Circuit's conclusion, plaintiffs argue that the "correctly calculate" requirement of § 191.51(b) is not a component of a "complete"

---

[19]     The Federal Circuit specifically referenced HMT and ET because of its previous decision in *Texport*, which found that MPF did, in fact, qualify for drawback. *Texport*, 185 F.3d at 1296.

drawback claim, and therefore, that a claimant need not calculate the amount of taxes and fees

sought prior to the three-year limit imposed under 19 U.S.C. § 1313(r)(1).  Pls.' Br. 9-11.

Plaintiffs base their argument on a reading of the regulation that governs the "completion

of drawback claims"[20] in conjunction with the regulations governing the "rejection, perfection, or

amendment" of drawback claims.[21] See Pls.' Br. 11 (citing 19 C.F.R. §§ 191.51, 191.52(a) and (b)

(1998)).  Specifically, plaintiffs argue that when these regulations are read together, "the only

reasonable reading" of a "complete" claim is one that contains the forms, certificates, and notices

found in § 191.51(a)(1).  In other words, for plaintiffs, a complete claim need not contain a "correct

calculation" of the amount of drawback due pursuant to subsection (b).  Pls.' Br. 11.  Plaintiffs argue

that this is because the regulations governing the rejection and perfection of drawback claims

define a claim as being either "complete" or "incomplete" in terms of containing the specified

forms, certificates, and notices, without any reference to subsection (b)'s "correctly calculate"

requirement.[22] See Pls.' Br. 11.  For plaintiffs, this reading renders the Federal Circuit's

---

[20]      19 C.F.R. § 191.51.

[21]      19 C.F.R. § 191.52(a), (b).

[22]      Specifically, 19 C.F.R. § 191.52(a) provides:

Upon review of a drawback claim, if the claim is determined to be *incomplete (see § 191.51(a)(1))*, the claim will be rejected and Customs will notify the filer in writing. The filer shall then have the opportunity to complete the claim subject to the requirement for filing a complete claim within 3 years.

19 C.F.R. § 191.51(a) (emphasis added).  Similarly, 19 C.F.R. § 191.52(b) provides, in pertinent part:

If Customs determines that the claim is *complete according to the requirements of § 191.51(a)(1)*, but that additional evidence or information is required, Customs will notify the filer in writing.

19 C.F.R. § 191.52(b) (emphasis added).

interpretation of a "complete" claim (*i.e.*, as requiring the correct calculation of any amount of drawback sought) unreasonable.[23] *See* Pls.' Br. 11.

Plaintiffs then argue that Customs' own construction of its regulations requires a finding that the "correctly calculate" requirement is not part of a "complete" drawback claim. Pls.' Br. 11-12. To support their position, plaintiffs quote a portion of Customs Headquarters Ruling HQ 228093, in which Customs' Office of Rulings and Regulations was asked to determine what action a port should take when an importer claims 100 percent drawback of duties paid, when by statute, the importer was only entitled to receive 99 percent.[24] In particular, plaintiffs direct the court to the following language:

> A drawback entry filed with incomprehensible attachments constitutes an *incompletely* filed claim and *is grounds for rejection* of a claim under 19 CFR 191.52(a). An *overstated claim for drawback should not be rejected*, however pursuant to 19 CFR 191.51(b), drawback should not be paid until the calculations have been corrected by the claimant.

Customs Headquarters Ruling HQ 228093 (Aug. 31, 1999) (emphasis added). For plaintiffs, "[i]f claims containing overstatements in the § 191.51(b) calculation of the amount of drawback due are not subject to" rejection as being "incomplete," then such calculations "cannot be a necessary component of a 'complete' claim . . . ." Pls.' Br. 12. In other words, plaintiffs argue that because Customs has found that failing to include the documents required under § 191.51(a)(1) is grounds for a claim's rejection as "incomplete," but a violation of the "correctly calculate" provision is not,

---

[23]    Plaintiffs claim that this argument is not foreclosed by *Aectra II* because that decision did not consider or address § 191.52(a) and (b). Pls.' Br. 11.

[24]    Notably, the case did not specifically address the question posed here regarding drawback of taxes and fees because the importer did not seek a drawback of either HMT or MPF.

a correct calculation of the amount of drawback due should not be subject to the three-year limitation period found in 19 U.S.C. § 1313(r)(1). *See* Pls.' Br. 12.

Plaintiff's arguments are unavailing. First, the *Aectra II* Court decided the issue of whether a "complete" drawback claim made after 1998 must include a correct calculation of whatever amount a claimant seeks to recover, including both taxes and fees. *See Aectra II*, 565 F.3d at 1371-72; *see also*, *Delphi Petroleum, Inc. v. United States*, 33 CIT 1758, 1763, 662 F. Supp. 2d 1348, 1353 (2009) ("Such a finding would be inconsistent with the Federal Circuit's holding in [*Aectra II*] that a 'complete claim' goes beyond the documentary requirements to complete a claim . . . and *includes the functional requirement to complete a drawback claim . . . [by producing] a calculation of the fees sought*.") (emphasis added); *Toyota Motor Sales, U.S.A., Inc. v. United States*, 35 CIT __, __, Slip Op. 11-113 at 35 (Sept. 8, 2011) ("A 'complete drawback claim' generally must include the 'drawback entry on Customs Form 7551, applicable certificate(s) of manufacture and delivery, applicable Notice(s) of Intent to Export, Destroy, or Return Merchandise for Purposes of Drawback, applicable import entry number(s), coding sheet unless the data is filed electronically, and evidence of exportation or destruction under subpart G of this part.' In addition, *a drawback claim must also include a correct calculation of the amount of reimbursement sought*.") (internal citations omitted) (emphasis added).

Federal Circuit precedent makes the correct calculation requirement clear. First, with respect to drawback claims subject to Customs' regulations, the Federal Circuit has held that "a 'complete' claim for purposes of the three-year limit of 19 U.S.C. § 1313(r)(1) must include a correct calculation of the amount of drawback due." *Aectra II*, 565 F.3d at 1372 (citing 19 C.F.R. § 191.51).

The case law dealing with claims made prior to promulgation of the regulation also does not aid plaintiffs. The Federal Circuit held in *Shell II* that, notwithstanding that § 191.51(b) (1998) was not in effect at the time Shell filed its drawback claims, Shell was nevertheless required to place Customs on notice "as to the specific amount it is seeking for a refund," including any taxes and fees. *Shell II,* 688 F.3d at 1384 ("Shell's focus on whether the pre-1998 regulations lacked explicit requirements to list taxes and fees as part of the total amount is misplaced because . . . Customs does not bear the burden to determine the maximum permissible amount for a drawback claim. Rather, it is on the claimant to place Customs on notice as to the specific amount it is seeking for a refund."); *see also id.* at 1385 n.6 ("To the extent Shell avers that the 1998 regulations created a requirement which did not exist previously, we agree with the CIT and conclude that the 1998 regulatory amendments merely clarified the requirements for what was already required for a proper drawback claim [(*i.e.*, a correct calculation of the amount of drawback sought)]."). Like Shell, plaintiffs here failed to put Customs on notice that they were seeking drawback of taxes and fees within the statutory timeframe.

Finally, as to plaintiffs' argument regarding Customs Headquarters Ruling HQ 228093, merely because Customs found that waiving strict enforcement of the "correctly calculate" requirement when a claimant asked for return of 100 percent, rather than 99 percent, of the duties paid would aid in the efficient handling of claims where there was a common error, it does not follow that Customs intended to create a rule that does away with the correct calculation requirement altogether.

Accordingly, because plaintiffs failed to include a correct calculation of the amount of taxes and fees sought within the three-year limit, the court sustains Customs' denial of plaintiffs' protests.

### B. A Correct Calculation of the Amount of Drawback Due Includes Any Taxes or Fees Sought by the Importer

Plaintiffs make a related argument with respect to the correct calculation of the amount of drawback due. Once the *Aectra II* Court had determined that a "complete" drawback claim under 19 U.S.C. § 1313(r)(1) included the "correct[] calculat[ion] of the amount of drawback due," it then addressed what a "correct calculation" specifically requires. *Aectra II*, 565 F.3d at 1372. Looking at the language of 19 U.S.C. § 191.51(b) (the "correctly calculate" requirement), the Court found that "on its face the phrase 'correctly calculate the amount of drawback due' requires a claimant to include an accurate calculation of the entire amount that it seeks to be refunded under the drawback statute," including any taxes and fees. *Id.*

Plaintiffs argue that even if the "correctly calculate" requirement of § 191.51(b) is a component of a "complete" claim under 19 U.S.C. § 1313(r)(1), the Federal Circuit's decision as to the meaning of the phrase "correctly calculate the amount of drawback due" is not binding authority. Pls.' Br. 14. That is, plaintiffs claim that certain language in the *Aectra II* decision indicates that the Federal Circuit "was admittedly unaware of Customs' authoritative construction" of what constitutes a "correct calculation" of the amount of drawback due, and therefore, its decision regarding the definition of a "correct calculation" is not binding precedent. Pls.' Br. 14. Specifically, plaintiffs reference the following paragraph as supporting their position:

> We are aware of no authoritative administrative construction of the "correctly calculate" requirement of 19 C.F.R. § 191.51(b) (1998), but we think that on its face the phrase "correctly calculate the amount of drawback due" requires a claimant to include an accurate calculation of the entire amount that it seeks to be refunded under the drawback statute.

*Aectra II*, 565 F.3d at 1372 (emphasis added). For plaintiffs, this language indicates that the Federal Circuit "only observed that it was unaware" of an authoritative administrative construction of the "correctly calculate" requirement, but its ruling did not go so far as to find that such an

authoritative construction did not exist. Pls.' Reply Br. 7. Therefore, according to plaintiffs, the

*Aectra II* decision left open the possibility of an alternative construction of what is meant by

"correctly calculate the amount of drawback due." Pls.' Reply Br. 7-8 ("Not being 'aware' of

alternative regulatory constructions and only 'thinking' they construed the regulation correctly

should not be viewed as creating binding precedent. . . . Given the open-ended nature of *Aectra*'s

determination, this Court has the latitude to consider and rule in plaintiff's favor."). Thus, because

plaintiffs claim such "an authoritative administrative construction" of the "correctly calculate"

requirement exists, they argue that the court may find in their favor, notwithstanding the *Aectra II*

decision.

It is apparent that the *Aectra II* and *Shell II* decisions are binding on the meaning of the

"correctly calculate" requirement of 19 C.F.R. § 191.51(b) and also for claims made before

promulgation of the regulation governing the "completion of drawback claims." *See Aectra II*, 565

F.3d at 1375; *see also Shell II*, 688 F.3d at 1380 ("[In *Aectra II*,] [w]e ultimately held that the

importer was not entitled to relief *because it failed to claim drawback of taxes and fees within the

statutory three-year period* within which all drawback claims must be filed."). Indeed, the *Aectra

II* Court based its interpretation on the plain meaning of the regulation, and held, unambiguously,

that "a complete claim under 19 C.F.R. § 191.51(b) (1998) requires a claimant to calculate not

only the amount of duty but also the amount of taxes and fees sought as drawback." *Aectra II*, 565

F.3d at 1375; *see also id.* at 1372 ("[W]e think that *on its face* the phrase 'correctly calculate the

amount of drawback due' requires a claimant to include an accurate calculation of the entire

amount that it seeks to be refunded under the drawback statute. The purpose of the 'correctly

calculate' requirement *is plain enough from the face of the regulation*; it is to allow Customs to

carry out its mandate to process drawback claims under the statute in an efficient and accurate

manner.") (emphasis added). Because the meaning of the "correctly calculate" requirement has been settled by the Federal Circuit in *Aectra II*, and because, even prior to the enactment of the "correctly calculate" regulation, importers were nonetheless "required to place Customs on notice that [they were] seeking drawback for [taxes and fees]," plaintiffs' argument fails. *Shell II*, 688 F.3d at 1384.

The court also notes that plaintiffs' arguments rely heavily on Customs having explicitly used the word "duty," at times, when referring to the correct calculation requirement of § 191.51(b). This is not surprising, however, since the regulation itself used the word "duty" when referring to the correct amount of drawback to be calculated. *See* 19 C.F.R. § 191.51(b) (1998) ("Drawback claimants are required to correctly calculate the amount of drawback due. The amount of drawback requested on the drawback entry is *generally to be 99 percent of the import duties eligible for drawback*.") (emphasis added). The *Aectra II* Court, however, considered this when interpreting the meaning of § 191.51(b), and ultimately concluded that the "correctly calculate" requirement nevertheless applied to any amount of drawback sought, including taxes or fees. *Aectra II*, 565 F.3d at 1373 ("In short, we think the first sentence of 19 C.F.R. § 191.51(b) (1998) in effect at the time Aectra filed its claims required a correct calculation of whatever amount a claimant sought to recover, not merely a calculation of the customs duties to be refunded. The remainder of paragraph (b), *which does refer specifically to duty, does not limit the requirement of the first sentence but simply discusses the calculation requirement as applied to the duty component of a drawback claim*. The second sentence of (b) notes that the drawback due is 'generally' to be 99 percent of the import duties eligible; *it does not state an absolute rule*.") (emphasis added). Moreover, the *Shell II* Court found that, "merely setting forth a claim for

drawback of import duties does not sufficiently make or preserve a claim for taxes and fees like HMT and ET." *Shell II*, 688 F.3d at 1384.

Therefore, plaintiffs' arguments regarding the proper construction of the "correctly calculate" requirement are precluded by *Aectra II*.[25]

**III.    The Right to Drawback of Taxes and Fees was Limited Under the 2004 Trade Act to Claimants who had Previously Sought Drawback of Taxes and Fees Within the Three-Year Limitation Period**

Plaintiffs then argue that their drawback claims for taxes and fees are not untimely under the "default rule." Pls.' Br. 19. The default rule is the principle that "Congress generally drafts statutes of limitations to begin when the cause of action accrues." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418 (2005). Under plaintiffs' default rule theory, the right to drawback of taxes and fees first arose on December 3, 2004, the date the 2004 Trade Act was enacted, and therefore, the three-year limit for plaintiffs to file a drawback claim for taxes and fees did not begin to run until December 3, 2004.[26] Pls.' Br. 19.

The court disagrees. Under the Federal Circuit's interpretation, the 2004 Trade Act "was designed to clarify prior law that 19 U.S.C. § 1313(j) had been intended to permit recovery of HMT" and that "the contrary *Texport* decision had been in error." *Aectra II*, 565 F.3d at 1369. The *Aectra II* Court observed that the 2004 Trade Act "was not designed to create a new right to drawback for HMT, but rather to clarify that HMT was always subject to drawback under the

---

[25]    Plaintiffs concede that there is no factual basis to distinguish this case from *Aectra II*. Recording of Oral Argument at 31:03. Moreover, Aectra presented similar arguments to the Federal Circuit in its petition for a rehearing *en banc*, which the Court of Appeals denied.

[26]    Notably, in making their argument, plaintiffs do not establish whether the default rule applies to administrative deadlines, such as the statutory three-year limitation period for the filing of drawback claims at issue here.

statute." *Id.* at 1370. Therefore, the usual three-year limitation period under 19 U.S.C. § 1313(r)(1)

remained for unliquidated claims following the enactment of the 2004 Trade Act. *See id.* ("Nothing

in the text of the [2004 Trade Act] states or suggests that [the 2004 Trade Act was] intended to

waive the normal three-year limit imposed by 19 U.S.C. § 1313(r)(1)."); *see also* 19 U.S.C.

§ 1313(r)(1) ("A drawback entry and all documents necessary to complete a drawback claim . . .

shall be filed or applied for, as applicable, within 3 years after the date of exportation or destruction

of the articles on which drawback is claimed . . . . Claims not completed within the 3-year period

shall be considered abandoned.").

Based on this analysis, the *Aectra II* Court found that the 2004 Trade Act's amendments

(clarifying the right to drawback of HMT) applied only "to unliquidated entries that *already*

*included a timely protective request for HMT.*" *Aectra II*, 565 F.3d at 1370 (emphasis added); *see*

*also id.* ("[I]t was not unreasonable to assume that Congress would limit the right [to drawback of

HMT] to those who had previously attempted to claim [drawback of HMT] within the three-year

limitations period . . . ."). In other words, according to the Federal Circuit, the 2004 Trade Act

provided a small retroactive window for previously-filed drawback claims that included a

"protective claim" for HMT or ET, so long as the entries had not been liquidated or the three-year

limitation period had not expired. *See id.*; *see also Shell II*, 688 F.3d at 1385 ("The 2004

amendments applied only prospectively, and to 'not yet finally liquidated [entries]' that 'already

included a timely protective request' for taxes and fees." (quoting *Aectra II*, 565 F.3d at 1369-

71)); *Shell I*, 781 F. Supp. 2d at 1337 ("Congress predicated the right to drawback of HMT and

ET on the filing of a timely claim for such drawback, either during the regular statutory three-year

period or during the six-month grace period following the 1999 amendments. *The default rule that*

*Shell invokes does not, and cannot, provide otherwise*. Therefore . . . Shell's 'default rule'

argument . . . must fail.") (emphasis added). Thus, because plaintiffs did not file their drawback

claims for taxes and fees within three years of exportation of the substitute petroleum products,

the court finds plaintiffs' claims to be untimely under 19 U.S.C. § 1313(r)(1).

## IV.     Congress' Enactment of the 2004 Trade Act Did not Violate the Separation of Powers Doctrine

As discussed above, in *Texport*, the Court of Appeals found that HMT was not a federal

exaction imposed "because of . . . importation" within the meaning of 19 U.S.C. § 1313(j) (1994).

*Texport*, 185 F.3d at 1297. Specifically, the Court observed that the HMT is "assessed in a

nondiscriminatory fashion against all shipments utilizing ports," and therefore, was ineligible for

drawback. *Id.* at 1296. Following *Texport*, the 2004 Trade Act "eliminat[ed] the requirement that

a charge be imposed 'because of' importation," and instead allowed drawback of any charge

assessed "*upon* entry" of merchandise. *Aectra II*, 565 F.3d at 1369. According to the legislative

history, Congress made this change because it believed the *Texport* decision had been in "error"

and that "allowing for drawback of the Harbor Maintenance Tax is consistent with original

Congressional intent."[27] S. Rep. No. 108–028, at 173 (2003); *see also Aectra II*, 565 F.3d at 1369.

---

[27]     Specifically, the legislative history states:

> *Explanation of provision*

The provision amends [19 U.S.C. § 1313(j)] to clarify that the Harbor Maintenance Tax (HMT) is a fee eligible for drawback under the statute.

> *Reason for Change*

The Committee believes that the U.S. Court of Appeals for the Federal Circuit erred in overturning the U.S. Court of International Trade's ruling . . . that [19 U.S.C. § 1313(j)] *allows drawback of the Harbor Maintenance Tax.* [Title 19 U.S.C. § 1313(j)] *allows for drawback of any duty, tax, or fee imposed under Federal law*

In *Aectra II*, the Federal Circuit, after examining the 2004 Trade Act's legislative history, found that "the amendment was designed to clarify prior law that 19 U.S.C. § 1313(j) had been intended to permit recovery of HMT," and that the "amendment was not designed to create a new right to drawback for HMT, but rather to clarify that HMT was always subject to drawback under the statute." *Aectra II*, 565 F.3d at 1369-70. Plaintiffs claim that *Aectra II*'s "characterization" of the 2004 Trade Act's amendments to § 1313(j) as "merely '*clarifying*' that the HMT was '*always subject to drawback under the statute*,'" and the Court's observation that the 2004 Trade Act "*was not designed to create a new right to drawback for HMT*," expressly contravene the Constitution's separation of powers doctrine "by failing to recognize the finality of the Federal Circuit's prior decision in *Texport*" and, as such, is "not binding on this Court." Pls.' Br. 22 (quoting *Aectra II*, 565 F.3d at 1370); *see also* Pls.' Br. 21 ("'[A] judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable to that very case was something other than what the courts said it was.'" (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995)). In other words, drawing a comparison to *Plaut*,[28] plaintiffs argue that the *Aectra II* Court's

---

*because of its importation. The Committee believes allowing for drawback of the Harbor Maintenance Tax is consistent with original Congressional intent.*

S. Rep. No. 108–028, at 173 (2003) (emphasis added).

[28]    In *Plaut*, the plaintiffs moved to reinstate § 10(b) claims which had previously been dismissed as time-barred under *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). *See Plaut*, 514 U.S. at 213-14. Pursuant to *Lampf*, claims under § 10(b) of the Securities Exchange Act of 1934 were required to be commenced within one year after the discovery of facts constituting a § 10(b) violation and within three years of such a violation. *See Lampf*, 501 U.S. at 364. The plaintiffs moved to reinstate their action, notwithstanding its dismissal (which had become final after plaintiffs failed to file a notice of appeal), pursuant to the later-enacted § 27A(b) of the Securities Exchange Act of 1934. Section 27A(b) provided that:

interpretation of the 2004 Trade Act as merely clarifying the law would require the reopening of

the *Texport* and *Warren* cases, thereby violating the separation of powers doctrine, and thus, that

the *Aectra II* decision may be ignored.

The court is not convinced by plaintiffs' separation of powers theory. Although "the views

of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," *United

States v. Price*, 361 U.S. 304, 313 (1960), Congress is nonetheless "free to change [a court's]

interpretation of its legislation." *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977); *see also

Guangdong Wireking Housewares & Hardware Co. v. United States*, 745 F.3d 1194, 1201 (Fed.

Cir. 2014) ("[T]he Supreme Court clarified that 'Congress can always revise the judgments of

Article III courts in one sense: When a new law makes clear that it is retroactive, an appellate court

must apply that law in reviewing judgments still on appeal that were rendered before the law was

enacted, and must alter the outcome accordingly.'" (quoting *Plaut*, 514 U.S. at 226)). Indeed,

"Congress may amend a statute to establish new law, but it also may enact an amendment to clarify

existing law, to correct a misinterpretation, or to overrule wrongly decided cases." *Brown v.*

---

[a]ny private civil action implied under section [10(b) of the Securities Exchange
Act of 1934] that was commenced on or before June 19, 1991 [the day before *Lampf*
was decided]—(1) which was dismissed as time barred subsequent to June 19,
1991, and (2) which would have been timely filed under the limitation period
provided by the laws applicable in the jurisdiction . . . as such laws existed on June
19, 1991 shall be reinstated on motion by the plaintiff not later than 60 days after
December 19, 1991 [the date § 27A(b) was enacted].

19 U.S.C. § 78aa-1 (1988 ed., Supp. V). The Supreme Court found, among other things, that
because the retroactive legislation "require[d] its own application in a case already finally
adjudicated," it effected a "clear violation of the separation-of-powers principle . . . ." *Plaut*, 514
U.S. at 225; *see also id.* at 240 ("We know of no previous instance in which Congress has enacted
retroactive legislation requiring an Article III court to set aside a final judgment, and for good
reason. The Constitution's separation of legislative and judicial powers denies it the authority to
do so. Section 27A(b) is unconstitutional to the extent that it requires federal courts to reopen final
judgments entered before its enactment.").

*Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (internal quotation marks and citation omitted); *see also Hawkins v. United States*, 30 F.3d 1077, 1082 (9th Cir. 1994).

The *Plaut* case relied upon by plaintiffs was a situation in which Congress purported to reopen final judgments of the courts, *i.e.*, a case in which Congress' legislation "require[d] its own application in a case already finally adjudicated . . . ." *Plaut*, 514 U.S. at 225; *see also id.* at 219 ("By retroactively commanding the federal courts to reopen final judgments, Congress has violated this fundamental principle [that a judgment conclusively resolves the case]."). Here, however, the amendments in the 2004 Trade Act do not allow for the reopening of final judgments. Rather, the amendments "overruled" the *Texport* and *Warren* decisions by clarifying that HMT is in fact eligible for drawback. Legislation which affects pending and future cases is certainly permissible under the separation of powers doctrine. *See Plaut*, 514 U.S. at 226. Thus, to the extent that plaintiffs argue such amendments in the 2004 Trade Act violate the separation of powers doctrine, the court disagrees.

**V.    Plaintiffs' Argument that Defendant is Responsible for its Delayed Claims for HMT is Waived**

In *Delphi Petroleum, Inc. v. United States*, 33 CIT 1758, 662 F. Supp. 2d 1348 (2009), this Court found that plaintiff Delphi was entitled to an extension of the statutorily required three-year limitation period because "Delphi's reliance on advice by the Customs supervisory drawback official . . . rendered Customs responsible for the otherwise untimely filing . . . ." *Delphi*, 33 CIT at 1764, 662 F. Supp. 2d at 1354 (citing 19 U.S.C. § 1313(r)(1)). In *Delphi*, an importer, confused by the state of the drawback law at that time, contacted Customs and indicated that although it did not include an application for drawback of HMT and MPF in its original claim, it intended to "file

a protest, after [it] receive[d] the duty drawback, with respect to [HMT and MPF] and that that

protest [could] be resolved after the court rules on the U.S. Customs appeal [in *Texport*]." *Delphi*,

33 CIT at 1759, 662 F. Supp. 2d at 1350. Delphi then asked Customs to "inform [it]" if its stated

approach was "incorrect" and, if so, it would "amend this drawback claim to include [HMT and

MPF]." *Id.*, 33 CIT at 1759-60, 662 F. Supp. 2d at 1350. Under the advice of a Customs

Supervisory Drawback Liquidator, Delphi did not amend its drawback claim to include HMT and

MPF, and instead, following liquidation of the entries at issue, filed a protest asking for HMT and

MPF for the entries at issue. *Id.*  Customs later denied Delphi's protest with respect to its drawback

requests because they were outside the three-year limitation period. *Id.* 33 CIT at 1761, 662 F.

Supp. 2d at 1351.

The *Delphi* Court found that because Delphi was "willing and ready to present the complete

claims" (*i.e.*, including requests for HMT and MPF), but instead, "relied upon the advice of the

Supervisory Drawback Liquidator," Customs was "deemed responsible for Delphi's delayed HMT

and MPF filings because Delphi had no clear administrative path to follow and a responsible

official unknowingly misled Delphi as to the proper course." *Id.* 33 CIT at 1766, 662 F. Supp. 2d

at 1355. Therefore, the Court held that "Customs abused its discretion in not granting the extension

of time to file the drawback claims" under 19 U.S.C. § 1313(r)(1). *Id.*

Plaintiffs argue, for the first time in their reply brief, that the same result is warranted here

because "Customs by its regulations made it impossible to file a drawback claim, within three

years of export, that expressly requested taxes and fees."[29]  Pls.' Reply Def.'s Resp. Pls.' Am. Mot.

Summ. J. and Resp. Def.'s Cross-Mot. Summ. J., ECF No. 89 23-24.

---

[29]    Notably, however, plaintiffs offer no evidence indicating that they corresponded
with Customs, or relied, to their detriment, on Customs' advice.

As an initial matter, the court finds that because plaintiffs did not articulate their position

that Customs was responsible for the delayed taxes and fees filings until their reply brief, they

waived their right to press that argument here. *See, e.g.*, *Novosteel SA v. United States*, 284 F.3d

1261, 1274 (Fed. Cir. 2002) (holding that plaintiff waived an argument that was not presented this

Court "until after [plaintiff] had filed its principal summary judgment brief," reasoning that

"parties must give a trial court a fair opportunity to rule on an issue other than by raising that issue

for the first time in a reply brief"). However, even if plaintiffs had briefed and preserved this

argument, they nevertheless could not prevail.

Specifically, 19 U.S.C. § 1313(r)(1) provides that "[n]o extension [of the three-year

limitation period] will be granted unless it is established that the Customs Service was responsible

for the untimely filing." 19 U.S.C. § 1313(r)(1). In *Delphi*, the importer indicated that it was

prepared to request drawback of HMT and MPF, but relied on the advice of a Customs Drawback

Supervisor to wait until after liquidation to file those claims. Moreover, Delphi's allegation was

supported with declarations of witnesses who attested to Customs' advice to wait and file a protest.

Here, plaintiffs have offered no admissible evidence supporting its allegation that Customs was

responsible for its untimely claim. The *Delphi* court was very clear that its holding was a narrow

one, particular to the facts in that case. *See Delphi*, 33 CIT at 1764, 662 F. Supp. 2d at 1354 ("The

court has addressed Delphi's claims in some detail to emphasize the narrowness of the ground

upon which Delphi succeeds. Under the facts of this case, Delphi's reliance on advice by the

Customs supervisory drawback official for the Port of New York rendered Customs responsible

for the otherwise untimely filing and qualifies Delphi for a statutory extension under the final

provision § 1313(r)(1)."). Here, plaintiffs' bare assertions that they would potentially face civil

and criminal sanction for filing drawback claims for HMT or MPF are not sufficient to entitle them

to relief under *Delphi*.  Therefore, the court finds that plaintiffs' claims for HMT, MPF, and/or ET

are untimely, as plaintiffs are not entitled to an extension under § 1313(r)(1).


### CONCLUSION

For the reasons stated above, the court finds that because plaintiffs' drawback claims did

not include a calculation of the taxes and fees sought within the three-year limitation period

imposed under the statute, these claims are now time-barred. Accordingly, the court denies

plaintiffs' motion for summary judgment and grants defendant's motion for summary judgment,

thereby sustaining Customs' denial of plaintiffs' protests. Judgment shall be entered accordingly.


                                                    /s/ Richard K. Eaton
                                                  Richard K. Eaton, Judge

Dated:        September 6, 2018
              New York, New York